UNITED STATES DISTRICT COURT    FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
LYNN MARIE PRIMIANI,

                    *Plaintiff*,                    MEMORANDUM
                                                                       AND ORDER
                -against-                                 09-CV-2405 (JG)

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                    *Defendant*.
---------------------------------------------------------------x
A P P E A R A N C E S:

    SHARMINE PERSAUD
        1105 Route 110
        Farmingdale, New York 11735
    *Attorney for Plaintiff*

    BENTON J. CAMPBELL
        United States Attorney
        Eastern District of New York
        271 Cadman Plaza East
        Brooklyn, NY 11201
    By:    Arthur Swerdloff
    *Attorney for Defendant*

JOHN GLEESON, United States District Judge:

        Lynn Marie Primiani has brought this action against Commissioner of Social Security Michael Astrue under 42 U.S.C. § 405(g), seeking review of Astrue's decision that she is not entitled to a period of Social Security Disability Insurance ("DDI") benefits under the Social Security Act ("the Act"). The parties have cross-moved for judgment on the pleadings,[1] the Commissioner seeking affirmation of his final decision that Primiani is not disabled, and therefore not eligible for DDI benefits, and Primiani seeking a reversal and remand for the sole

---

[1] The plaintiff did not formally move for judgment on the pleadings. However, in her opposition to the Commissioner's motion she seeks a remand solely for the calculation of benefits. Accordingly, as indicated in my order dated January 8, 2010, I construed her opposition to the Commissioner's motion to have made a cross-motion for judgment on the pleadings.

purpose of awarding benefits. Oral argument on the cross-motions was held on January 29, 2010. For the reasons that follow, Primiani's motion is granted, and the Commissioner's motion is denied.

BACKGROUND

A.  *Primiani's Claim of Disability*

Primiani was born on December 23, 1960 and is now 49 years old. She graduated from high school and completed one year of college. For 27 years, from 1977 until the onset of her disability in June 2004, Primiani worked as a secretary.

On February 9, 2000, Primiani was hit as a pedestrian by a truck, causing numerous physical injuries. She could not work for six months following the accident. As a result of the accident, her left tibia was completely dislocated. The injury required surgery, during which screws were placed in her knee and ankle. Primiani testified that her knee has not improved in the years since the accident. She continues to feel pain in her left leg after about an hour of sitting down. Her knee swells, which requires her to stand so that the fluid retained in her leg dissipates.

In addition to her left knee and leg pain, Primiani has long suffered from rheumatoid arthritis, which worsened after her accident. Her neck, back and arms swell as a result of the arthritis. It causes her to feel fatigued and very weak; specifically, she stated that her "body feels very heavy from all the swelling." R. 489.[2] Primiani takes three different medications (Sulfasalazin, Prednisone and Methotrexate) to treat her pain. The side effects of these medicines include dizziness, fatigue and disorientation. In addition, Primiani must take a fourth medication to combat the nausea caused by the medications. She also takes medication to

---

[2] "R." refers to the pages of the administrative record.

treat her panic attacks and prevent future attacks. In total, Primiani testified that she takes 200 pills a month.

Primiani also suffers from carpal tunnel syndrome. In 2003, she had two surgeries -- one on each of her wrists -- to address the effects of her carpal tunnel syndrome. She still feels severe pain in both wrists and as a result is unable to type for long periods of time.

Primiani lives with her sixteen year-old daughter, who she drives ten miles to school each morning and who she picks up from the train station at the end of the school day. On the weekends, Primiani takes her daughter to sports practice and games. During the day, while her daughter is at school, Primiani cooks and cleans a little. She washes dishes and makes the beds, but sends the laundry out to be washed. She can go grocery shopping, but she must have the groceries delivered because she cannot carry them up the one and one-half flights of stairs to her apartment. She attends church once a month, travels eight miles to see her parents once a week and can walk approximately eight blocks. Primiani testified that she cannot carry heavy objects for long periods of time; at times she even drops drinks while trying to pour them. She can lift a gallon of milk and a ten-pound bag of potatoes, but carrying the bag of potatoes through the grocery store is too difficult for her. She cannot raise anything heavy above her head and she cannot walk for long periods. She can stand or sit for only about 15 to 20 minutes before having to change positions.

B.   *Procedural History*

Primiani filed an application for benefits on February 2, 2006, alleging disability beginning on June 13, 2004.[3] Her application was denied by the Social Security Administration on May 9, 2006. On March 11, 2008, Administrative Law Judge ("ALJ") Hazel C. Strauss held

---

[3] The onset date was amended orally at the hearing to June 9, 2004.

a hearing on Primiani's disability claims. On October 14, 2008, ALJ Strauss found Primiani not to be disabled. On May 6, 2009, the Appeals Council denied Primiani's request for review of the ALJ's unfavorable decision. Primiani filed the complaint in this case on June 8, 2009, alleging that the Commissioner's decision is not supported by substantial evidence and that she is disabled.

C.   *The Medical Evidence*

    1.   *Dr. Richard Crane -- Treating Physician*

Dr. Richard Crane, a rheumatologist, has been treating Primiani for her rheumatoid arthritis for more than ten years.[4] In an assessment submitted to the New York State Office of Temporary and Disability Assistance ("disability assessment"), dated February 1, 2006, Crane noted that Primiani suffers from severe joint pain and limited movement of her hand and wrists. He stated that she experiences chronic fatigue as well as stiffness and numbness in the hand. He characterized her condition as a "chronic progressive disease." Crane stated that Primiani could stand or walk less than two hours a day and sit less than six hours a day.

In February 2008, Crane repeated many of his medical observations about Primiani in a Residual Functional Capacity ("RFC") assessment. He stated that rheumatoid arthritis is a chronic disease, which causes Primiani to suffer from severe pain in her joints, reduced grip strength and chronic fatigue. According to Crane, Primiani's symptoms frequently interfere with her concentration and she is incapable of performing even "low stress jobs" because of her chronic pain. He also stated that she cannot grasp, turn or twist objects and cannot complete fine manipulations with her fingers or reach overhead frequently.

---

[4] Unfortunately, Crane's notes of his visits with Primiani are mostly illegible. As a result, I have relied primarily on the forms he completed in support of her application for disability benefits.

2. *Dr. Baruch Toledano*

Dr. Baruch Toledano, an orthopedist, performed surgery on Primiani following her February 2000 accident. Although he advised Dr. Crane that the surgery was a success, Toledano indicated that Primiani would need therapy to regain full motion of her left lower extremity. Two years following the surgery, Toledano noted that Primiani was recovering well, but in November 2002 she twisted her ankle while running, and, thereafter she again began experiencing pain in her ankle.

During a visit to Toledano in December 2002, Primiani complained of bilateral hand numbness, which Toledano attributed to bilateral carpal tunnel syndrome. In June and August 2003, he performed carpal tunnel release surgery on each of Primiani's wrists. In December 2003, he wrote a letter explaining that, despite the two surgeries, Primiani was still experiencing pain and difficulty in her wrists, which was caused by her constant typing during the workday.

Toledano saw Primiani several times in 2004 and again in May 2005. During visits in October 2004 and May 2005, Primiani complained of persistent pain in both of her hands and stated that she had not been able to return to work due to her pain. In his notes from the visits, Toledano noted that Primiani had a full range of motion in both hands. In October 2004, he advised Primiani that she may have residual carpal tunnel syndrome that was not severe enough to show up as an abnormality in the EMG test, which when conducted in February 2004 was normal.

On February 28, 2008, Toledano completed a RFC questionnaire regarding Primiani. In the assessment, he referenced an EMG test completed in June 2003, which showed

some of Primiani's medical impairments. He identified Primiani as suffering from persistent bilateral pain and limited grip strength in both hands. Like Crane, Toledano stated that Primiani frequently experienced pain severe enough to interfere with her attention and concentration. He stated that she had limitations in repetitive reaching, handling and fingering objects. His prognosis was guarded and he stated that her ailments could last at least 12 months.

    3.    *Dr. Paul Lombardi*

For a period of time, Primiani was also treated by Dr. Paul Lombardi, her family physician. Beginning in June 2002, Lombardi gave Primiani regular B-12 injections, which Primiani testified at her hearing were to combat her fatigue. Following her August 2004 visit to his office, Lombardi noted that Primiani complained of lightheadedness, fatigue, headaches, nasal drainage, bilateral hand pain and numbness, as well as panic attacks.

    4.    *The February 2004 MRI*

In February 2004, Dr. Itzhak Haimovic, a neurologist, recommended that Primiani have an MRI test of her cervical spine and disc spaces. The MRI revealed a posterior bulge of the C5-C6 intervertebral disc. Dr. Haimovic determined that Primiani suffered from cervical radiculopathy.[5] He recommended physical therapy for six weeks.

    5.    *Dr. Louis Tranese -- Consultative Examination*

At the request of a state agency, Dr. Louis Tranese performed an orthopedic examination of Primiani on April 13, 2006. Tranese reported that Primiani said that she had experienced increased hand and wrist pain as well as numbness in both hands following her bilateral carpal tunnel syndrome. Tranese stated that Primiani had normal grip strength, no joint

---

[5] Cervical radiculopathy is a dysfunction of a nerve root of the cervical spine. http://emedicine.medscape.com/article/94118-overview.

inflammation or instability. Tranese found that Primiani suffered from bilateral carpal tunnel syndrome. He also stated that she "reportedly" suffered from rheumatoid arthritis and osteoarthritis. Tranese's prognosis for Primiani was "poor given the lack of resolution of her symptoms and pain following surgery." R. 349.

6.  *J. Jackson -- Disability Analyst*

On May 8, 2006, J. Jackson[6] completed a RFC assessment of Primiani. Jackson did not examine Primiani; this assessment was based entirely on his review of her medical record. Jackson determined that Primiani could occasionally lift and carry up to 20 pounds and could stand, sit and walk for about six hours of an eight-hour workday.

7.  *Gary S. Friedman -- State Agency Medical Consultant*

On May 8, 2006, Gary S. Friedman completed a physical RFC assessment of Primiani. Based on his review of her medical file, Friedman determined that Primiani could lift and carry ten pounds occasionally. Further, he found that she could sit, stand and walk for six hours in an eight-hour workday and that she had no push or pull limitations.

8.  *Dr. Lourdes Marasigan -- State Agency Medical Consultant*

On April 24, 2006, Dr. Lourdes Marasigan, a State Agency medical consultant, reviewed Primiani's medical records. She determined that the physical findings of Primiani's treating physician, Dr. Crane, should be clarified. Further, she stated that Dr. Tranese gave a restricted RFC assessment, which was inconsistent with his physical findings. Marasigan stated that Tranese's findings should be further clarified.

On May 3, 2006, Marasigan had a telephone conversation with Crane. According to her notes of the conversation, Crane stated that (1) Primiani had difficulty using her hands

---

[6] The first name of the analyst is not identified in the record.

because of pain, but he could not comment on the dexterity of her fingers since he had not paid attention to her finger motion; (2) she could handle some papers and answer the telephone, but could not do continuous fine manipulation of the fingers; (3) there were some deformities in Primiani's fingers; (4) Primiani suffered from intermittent bouts of fatigue, and could lift light weight; and (5) Primiani suffered from rheumatoid arthritis affecting the hands and wrists and also carpal tunnel syndrome. As a result of this conversation and her review of Primiani's medical records, Marasigan determined that Primiani could lift up to 20 pounds and carry as much as ten pounds. She opined that she could sit, stand and walk for six hours of the day, but could not do frequent fine manipulations of the fingers.

9. *Testimony of Pat Green -- Vocational Expert*

Pat Green, a vocational expert, testified by telephone at Primiani's hearing before the ALJ. Based on Primiani's testimony, Green determined that Primiani could work as an information clerk, referral and information aide and telephone quotation clerk. Green testified that all three jobs required some manual dexterity. He also testified that an individual who could sit no more than two hours and stand or walk no more than two hours is not employable.

D. *The ALJ's Decision*

Applying the five-step sequential evaluation prescribed by 20 C.F.R. § 404.1520, which is described further below, the ALJ found at step one that Primiani had not engaged in substantial gainful activity since June 13, 2004. At step two, she found that Primiani suffered from the following severe impairments: Rheumatoid Arthritis affecting her bilateral hands; Bilateral Carpal Tunnel Syndrome; and Status Post Carpal Tunnel Release Surgery. The ALJ found that Primiani's claims regarding her left tibia and cervical disc disease did not warrant a

8

finding of severity. The ALJ found at step three that Primiani's combination of impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. § 404.1520(d) and 404.1526. *Id.* at 16-17. At step four, the ALJ found that Primiani could not perform her past relevant work as a secretary. *Id.* at 24. The ALJ then found that Primiani had the residual functional capacity ("RFC") to perform a wide range of sedentary work as defined in 20 C.F.R. § 404.1567(a), including information clerk, referral and information aide and telephone quotation clerk.

When the Appeals Council denied review of that decision on May 6, 2009, it became the final decision of the Commissioner.

## DISCUSSION

A.   *The Legal Standard*

Under 42 U.S.C. § 405(g), I review the Commissioner's decision to determine whether it is "'supported by substantial evidence in the record as a whole or [was] based on an erroneous legal standard.'" *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997)). In deciding whether the Commissioner's conclusions are supported by substantial evidence, a reviewing court must "first satisfy [itself] that the claimant has had 'a full hearing under the Secretary's regulations and in accordance with the beneficent purpose of the Act.'" *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982) (quoting *Gold v. Sec'y of Health, Educ. & Welfare*, 463 F.2d 38, 43 (2d Cir. 1972)).

Under the Social Security Act, Primiani is entitled to DDI benefits if "by reason of [a] medically determinable physical or mental impairment … which has lasted or can be

expected to last for a continuous period of not less than 12 months," 42 U.S.C. § 423(d)(1)(A), she "is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy," *id.* at § 423(d) (2)(A). The Commissioner decides whether the claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1527(e)(1).

The Social Security Administration's regulations break down the inquiry into a five-step process:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the Commissioner next considers whether the claimant has a severe impairment which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider [her] disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the Commissioner then determines whether there is other work which the claimant could perform.

*DeChirico v. Callahan*, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (internal quotation marks, brackets and ellipsis omitted); *see also* 20 C.F.R. § 404.1520(a)(4)(setting forth this process).

In making the required determinations, the Commissioner must consider (1) the objective medical facts; (2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the claimant's symptoms submitted by the claimant, her family and others; and (4) the claimant's educational background, age and work experience. *Carroll v.*

10

*Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). Further, the ALJ conducting the administrative hearing has an affirmative duty to investigate facts and develop the record where necessary to adequately assess the basis for granting or denying benefits. *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000) ("Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits. . . ."); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). If "the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose," it is appropriate for a court to reverse an ALJ's decision and order the payment of benefits. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).

B.  *The ALJ's Evaluation of the Medical Evidence*

As discussed above, the Commissioner's decision denying benefits was based on his conclusion that Primiani, despite her severe impairments, retained the residual functional capacity to perform a wide range of sedentary work. Primiani contends that this finding is not based on substantial evidence and was the result of erroneous application of the governing regulations.

1.  *The ALJ's Decision to Discredit the Findings of Dr. Crane*

Primiani argues that the ALJ erroneously failed to accord controlling weight to the findings of Dr. Crane, her treating rheumatologist. The Commissioner contends that the ALJ properly declined to accord Crane's assessment controlling weight because it was not well-supported by objective medical evidence and was inconsistent with the other evidence in the record.

While the final determination as to disability rests with the Commissioner, a treating physician's opinion about a claimant's impairments is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (upholding these regulations). When the Commissioner does not give a treating physician's opinion controlling weight, that is not the end of the matter, for the regulations require her to explain what weight (short of "controlling") she chooses to give the opinion. That determination must be made by reference to: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." *Schaal*, 134 F.3d at 503 (citing 20 C.F.R. § 404.1527(d)(2)).

The Commissioner must set forth "good reasons" for refusing to accord the opinions of a treating physician controlling weight. She must also give "good reasons" for the weight actually given for those opinions if they are not considered controlling. 20 C.F.R. § 404.1527(d)(2); *see also Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physicians [sic] opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion."); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)("Under the applicable regulations, the Social Security Administration is required to explain the weight it gives to the opinions of a treating physician."); *Heath v. Astrue*, No. 07-CV-1238, 2008 WL

1850649, at *2 (E.D.N.Y. Apr. 24, 2008) ("Where there is conflicting evidence on the issue of disability, 'it is for the [Social Security Administration], and not this court, to weigh the conflicting evidence in the record,' particularly when the court 'cannot say with certainty what weight should be assigned ... to the opinion of plaintiff's treating physician.'")(quoting *Schaal*, 134 F.3d at 504 (alterations in original)).

There is no dispute that Crane was Primiani's treating physician before and during the period of her claimed disability. Although Crane has treated Primiani since 1999, the ALJ decided not to give his opinion controlling weight. Specifically, the ALJ found that Crane's assessment was "not entitled to controlling weight, or even significant weight . . . It is given very little weight." R. 22. The ALJ found that Crane's opinion was not entitled to "controlling weight" because his opinion (1) was not based on regular frequent examinations; (2) was inconsistent with statements made to a State Agency medical consultant; and (3) was not consistent with Primiani's activities, which included caring for her personal needs, driving her daughter to school, shopping and functioning on a daily basis. I conclude that the ALJ did not provide good reasons for not giving Crane's opinion controlling weight.

The first reason offered by the ALJ is that Crane's assessment was not the product of regular frequent examinations. Specifically, the ALJ stated that Crane's opinion was "not credible" because he saw Primiani "only about once or twice a year." R. 21. But the Commissioner conceded at oral argument that there is nothing in the record to support the ALJ's implicit conclusion that the frequency of Primiani's visits to her rheumatologist was unusual. In fairness to Primiani, the ALJ should have developed the record in that regard before drawing an inference against the claimant. Furthermore, the regulations define a treating physician as one

who provides the claimant with medical treatment and evaluation and has had an ongoing relationship with the claimant. 20 C.F.R. § 404.1502. They explicitly state that an acceptable medical source can be considered a treating source even if he or she has "treated or evaluated [the claimant] only a few times or only after long intervals (e.g., twice a year) … if the nature and frequency of the treatment or evaluation is typical for [the claimant's] condition(s)." *Id.* In this case, there is no reason to believe that Crane was not sufficiently familiar with Primiani's condition, especially since Crane, a specialist in the field of rheumatology, has been treating Primiani consistently for more than ten years. Such a relationship certainly enables Crane to provide a "detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence." 20 C.F.R. § 404.1527(d)(2).

Second, the ALJ determined that Crane's opinion was not entitled to controlling weight because his RFC assessment was inconsistent with statements attributed to him by Marasigan. Specifically, Marasigan's notes of a May 3, 2006 telephone conversation with Crane report that, according to Crane, Primiani could handle some papers, answer the telephone and complete gross (but not fine) manipulation of the fingers. Further, Marasigan's notes indicate that Crane stated that Primiani "can lift light weight," experiences "bouts of fatigue" and suffers from rheumatic arthritis affecting both hands and carpal tunnel syndrome. R. 361. Thereafter, Marasigan made her conclusions, as described above. The ALJ found, inexplicably, that Crane's opinion, as expressed only in Marasigan's brief report of this conversation, was to be accorded "significant weight" (R. 23) even as she virtually disregarded his own first-hand assessments set forth in his RFC assessment. The ALJ belittled Crane's RFC assessment as a mere "check-off form," but I have reviewed it and disagree with that assessment. The five-page "Medical Source

14

Statement -- Rheumatoid Arthritis" contains various open-ended inquiries and strikes me as anything but a "check-off form." *See* R. 375-79. To the contrary, it enables a medical professional with Crane's special expertise to present to a non-medical audience the information needed to determine the full extent of the claimant's physical limitations. And if the ALJ found it lacking, that is, if she believed Crane's RFC assessment provided insufficient information about his opinion, the ALJ should have inquired further of him in accordance with her obligation to develop the record further. *See Sims,* 530 U.S. at 110-11.

I also disagree with the ALJ's decision to allow Marasigan's brief notes of a May 3, 2006 telephone call with Crane to trump a written RFC assessment written by Crane himself on February 29, 2008. According to Marasigan, on May 3, 2006, Crane noted that Primiani could lift light weight.[7] In the RFC assessment Crane completed two years later, Crane stated that Primiani cannot lift any weight.[8] It is quite possible -- and, given the evidence in the record, likely -- that Primiani's condition deteriorated in the two years between the disability and RFC assessments. In any event, if the ALJ saw an inconsistency, it was her duty to inquire of Crane whether the two-year span between the conversation and the RFC did, in fact, account for Crane's slight change in opinion. The remaining portions of Crane's conversation with Marasigan are consistent with Crane's RFC assessment. He noted her difficulty in using her

---

[7] In addition to the RFC assessment Crane filled out in February 2008, Crane completed a disability assessment dated February 1, 2006. This assessment, which was completed three months prior to Crane's telephone call with Marasigan, is consistent with Crane's statement that Primiani could lift light weight. On the disability assessment, Crane indicated that Primiani could occasionally lift an unspecified amount of weight. In fact, although an option, Crane did not indicate on the form that Primiani was completely unable to lift and carry any weight.

[8] The ALJ also stated that Crane's assessments that Primiani could not lift less than ten pounds was inconsistent with her testimony at the hearing. In the RFC, Crane indicated that Primiani could never "*lift and carry*" less than ten pounds. R. 378. Upon questioning by the ALJ at the hearing, Primiani testified that "I guess I could lift [a ten-pound bag of potatoes], but if I had to carry it through the store I would not be able to." R. 500. Primiani's testimony that she cannot carry a ten-pound weight is entirely consistent with Crane's RFC assessment.

hands, her hand pain and that she could not complete fine manipulation -- opinions which are all reflected in the RFC assessment.

The third reason the ALJ offered for disregarding Crane's assessment was that it was contradicted by Primiani's daily activities. The ALJ observed that if Crane's assessment were correct, Primiani would be "bedridden." R. 21. However, nothing in Crane's assessment indicated that Primiani must be bedridden, and the Commissioner conceded at oral argument that this was an exaggeration by the ALJ. The ALJ noted that such limitations are inconsistent with the fact that Primiani does the household chores, drives her daughter to school and walks eight to ten blocks. Crane stated that Primiani must walk approximately every 30 minutes for approximately ten minutes in order to alleviate her pain. He stated that her legs did not need to be elevated and that she did not require a cane or other assistive device to walk. In fact, Crane's assessments stated that Primiani has chronic pain in her hands and wrists and that she cannot complete fine manipulations of the fingers. This assessment is not contradicted by the fact that she conducts essential daily activities.

Furthermore, there is evidence to support Crane's assessment of Primiani's limitations. Crane's medical opinion is supported by the assessments of Toledano and Tranese. Toledano treated Primiani following her February 2000 accident. He performed the surgery on her left leg as well as on both of her hands. In a RFC questionnaire completed in February 2008, Toledano stated that Primiani suffered from persistent bilateral pain and limited grip strength in both of her hands. Consistent with Crane's assessment, Toledano stated that Primiani frequently experiences pain severe enough to interfere with her attention and concentration. In addition, Tranese, who performed an examination of Primiani at the request of the Social Security

Administration, determined that Primiani continued to suffer from hand and wrist pain. His prognosis for her was poor -- a fact entirely ignored by the ALJ.

Even if the ALJ thought otherwise based on the reports of the disability analyst and two state agency consultants, none of whom examined Primiani, she should have inquired further. Under the regulations, when the evidence received from a treating physician is inadequate to determine whether a claimant is disabled, the ALJ "will need additional information to reach a determination or a decision." 20 C.F.R. § 404.1512(e). Additional clarifying information is sought "when the report from [a] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." *Id*. If the ALJ saw a conflict between the other evidence in the record and Crane's opinion that Primiani was disabled, she should have sought clarification from the treating physician.

2. *The ALJ's Adverse Credibility Finding*

In resolving whether a claimant is disabled, the Commissioner must consider subjective evidence of pain or disability testified to by the claimant. However, "[s]tatements about a claimant's pain cannot alone establish disability; there must be medical evidence that shows that the claimant has a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms alleged." *Davis v. Massanari*, No. 00-CV-4330, 2001 WL 1524495, at *6 (S.D.N.Y. Nov. 29, 2001).

The ALJ has discretion to evaluate a claimant's credibility, and "[i]f the ALJ's decision to ignore plaintiff's subjective complaints of pain is supported by substantial evidence,

then this Court must uphold that determination." *Aronis v. Barnhart*, No. 02-CV-7660, 2003 WL 22953167, at *7 (S.D.N.Y. Dec. 15, 2003). However, the ALJ must set forth her reasons for discounting a plaintiff's subjective complaints with "sufficient specificity to enable [the district court] to decide whether the determination is supported by substantial evidence." *Miller v. Barnhart*, No. 02-CV-2777, 2003 WL 749374, at *7 (S.D.N.Y. Mar. 4, 2003).

Primiani's impairments obviously could be expected to produce the symptoms of which she complains. She had three surgeries in the four years before she could no longer work. She has lasting effects from the serious injuries she suffered when hit by a truck in 2000 and well-documented chronic pain from her 2003 carpal tunnel surgeries and longstanding rheumatoid arthritis. Her 27-year work history, which extended beyond her six-month convalescence after being hit by the truck and both wrist surgeries, strongly suggests a determination to work for as long as she could. Nevertheless, the ALJ stated that Primiani's testimony about the persistence and limiting effects of these symptoms was not credible. The ALJ pointed to Primiani's descriptions of driving her daughter to school on a daily basis, cooking and cleaning while her daughter is at school, visiting her parents once a week only eight miles away and going to church once a month. But Primiani's testimony simply does not support the conclusion that she testified falsely about her pain. She cooks and cleans a little, sending her laundry out. She has her groceries delivered to her home because she cannot carry them. Although she can lift certain items, she often drops heavy items if she carries them for any length of time. She goes to church once a month -- certainly not a "daily" activity as contemplated by the regulations. Finally, she ensures that her teenage daughter arrives at school every day and returns home safely. The ALJ opined that if Primiani's hands bothered as much as

18

she claimed, "it is unlikely that" she could do all these things. I disagree. These functions are life's necessities, and Primiani, a single mother, has no one else to do them for her. That she manages to accomplish them (with the help of 200 pills per month) does not make it likely that she lied about the pain she endures. Accordingly, I find that the ALJ's conclusion that Primiani's testimony about her pain was not credible is not supported by substantial evidence.

CONCLUSION

For the reasons discussed above, the Commissioner's motion for judgment on the pleadings is denied. I have carefully considered the factors that inform the decision whether to remand for further proceedings rather than calculation of benefits. *See, e.g., Butts v. Barnhart*, 388 F.3d 377, 385-87 (2d Cir. 2004). Because in my view the Commissioner (1) lacked good reasons for refusing to give controlling weight to Dr. Crane's assessment of Primiani's ability to work and (2) improperly rejected Primiani's own testimony about her chronic disabling pain, there is no basis to conclude that a more complete record might support the Commissioner's decision. Accordingly, rather than subject Primiani once again to the painfully slow process by which disability determinations are made, the case is remanded solely for the calculation of benefits.

So ordered.

John Gleeson, U.S.D.J.

Dated: February 5, 2010
Brooklyn, New York

19